UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONSO GOMES REYNALDO,<br><br>Petitioner,<br><br>v.<br><br>A. ARNOLD, Warden,<br><br>Respondent. | No. 2:15-cv-2182 KJM DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a 2007 conviction for second degree murder and assault with a deadly weapon. Below, the court considers respondent's argument that the petition is untimely and petitioner's response that he is entitled to equitable tolling. The court will recommend dismissal of the petition as untimely.

**BACKGROUND**

After waiving his right to a jury trial, petitioner was convicted by a trial court of second degree murder and assault with a deadly weapon. On January 5, 2007, petitioner was sentenced to a term of nineteen years to life, fifteen years on the murder conviction and a consecutive term

////

////

////

of four years on the assault conviction. (Abstract of Judgment, LD 1.[1]) In his appeal, petitioner argued that the trial court erred in sentencing him to the upper term for the assault conviction because it relied on facts that were not found beyond a reasonable doubt. On April 3, 2008, the California Court of Appeal for the Third Appellate District rejected that claim and affirmed the conviction. People v. Gomes Reynaldo, No. C054626 (LD 2). Petitioner did not seek direct review in the California Supreme Court.

Petitioner filed one state habeas petition in the California Supreme Court on August 2, 2009. (LD 3.) He raised the same claim he had raised on appeal. The California Supreme Court denied the petition on January 13, 2010. (LD 4.) The court's opinion states simply "The petition for writ of habeas corpus is denied. (*See In re Waltreus* (1965) 62 Cal.2d 218.)" (Id.) A citation to Waltreus indicates that the issues in the petition were raised on appeal. See Waltreus, 62 Cal. 2d at 225 (habeas "ordinarily cannot serve as a second appeal").

Petitioner filed the present federal petition on October 17, 2015. (ECF No. 1.) Therein, petitioner raises one claim – that he was sentenced to four years but has served far more time than that.

Respondent moved to dismiss the petition on the grounds that it was untimely and petitioner had not exhausted his state remedies. (See ECF No. 14.) In response, petitioner argued that he should be entitled to equitable tolling of the statute of limitations because he is not mentally competent, has limited English language skills, and is unfamiliar with the law. Petitioner also sought stay and abeyance of these proceedings to permit him to exhaust. (See ECF Nos. 20, 23.) Finally, petitioner mentioned other possible habeas claims in his opposition. (ECF No. 23.)

The court determined that it had insufficient information to rule on the statute of limitations issues because the court did not have petitioner's mental health records. The court then considered respondent's statement that petitioner's claim was, in any event, meritless

---

[1] Respondent lodged copies of documents from the state court record on February 8, 2017. (See ECF Nos. 30, 31.) Those documents are identified herein by the Lodged Document "LD" number assigned them by respondent.

2

because petitioner had been sentenced to a term of nineteen years to life. The court ordered petitioner to address respondent's evidence showing that petitioner's sentence was nineteen years to life. The court further informed petitioner that if he wished to raise additional claims, he must move to amend the petition. (ECF Nos. 32, 34.)

In a document filed April 24, 2017, petitioner did not directly address respondent's evidence showing the length of his sentence. Instead, petitioner states that his "jailhouse lawyer" failed to fully exhaust all of petitioner's sentencing issues in the lower courts. Petitioner contends that his mental health issues and severely limited grasp of the English language hindered his ability to assist in preparation of his petition. Petitioner seeks dismissal of this action without prejudice so that he may exhaust the "constitutional claims surrounding the totality of sentencing issues." (ECF No. 35.)

The court considered petitioner's filings as attempts to amend his petition to assert new claims. (May 31, 2017 Order (ECF No. 36).) Recognizing that any amendment would be futile if petitioner's original petition was untimely, the court re-opened consideration of the statute of limitations and equitable tolling issues. The court ordered respondent to provide the court with a copy of petitioner's mental health records from the date of his incarceration in 2007 through the present. Respondent lodged those records on June 30, 2017. (See ECF Nos. 37, 38.)

**STATUTE OF LIMITATIONS**

**I.     Background**

The court found previously that petitioner's 2015 federal petition was filed well outside the one-year statute of limitations. (Feb. 17, 2017 Order (ECF No. 32).) Petitioner's conviction was final on May 13, 2008. (See id. at 5.) Therefore, the statute of limitations began to run the following day and petitioner's federal petition was due on May 14, 2009. Petitioner is not entitled to statutory tolling because he did not file a state petition within that one year period. (See id.) Even if petitioner was entitled to statutory tolling, his petition was still untimely. If the court considers the statute tolled during the period petitioner's one state habeas petition was pending, then his federal petition should have been filed no later than January 13, 2011, one year after the California Supreme Court denied his state habeas petition. (See id.) Petitioner did not

3

file his federal habeas petition until more than four years later on October 17, 2015, the date he placed his petition in the mail. (ECF No. 1 at 7.)

The court also notes here that a later trigger date for the statute of limitations is possible under 28 U.S.C. § 2244(d)(1)(D). Pursuant to that section, the one-year-limitation period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." While petitioner's new claims are not clear, it is clear that he is alleging his jailhouse lawyer erred when he failed to raise them in petitioner's state petitions. Therefore, petitioner is not asserting newly discovered claims and the later trigger date of subsection (d)(1)(D) does not apply.

Petitioner's federal petition can thus only be deemed timely if the limitations period was equitably tolled. The time period the court considers, giving petitioner every benefit of the doubt, is between May 2008 when his conviction became final and January 2011, the last possible date he could have filed a timely federal petition. Petitioner states three grounds for equitable tolling: his mental competence, his limited English language skills, and his unfamiliarity with the law.

**II.    Is Petitioner Entitled to Equitable Tolling?**

**A. General Legal Standards**

The limitations period of § 2244(d)(1) may be equitably tolled if a petitioner establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). An extraordinary circumstance must be more than merely "'oversight, miscalculation or negligence on [the petitioner's] part.'" Waldron–Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)). Rather, petitioner must show that some "external force" "stood in his way." Id. "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule." Lakey v. Hickman, 633 F.3d 782 (9th Cir. 2011) (citations and internal quotation marks omitted).

////

////

4

**B. Analysis**

**1. Ignorance of the Law**

The Ninth Circuit has made clear that a "pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); see also Baker v. Cal. Dep't of Corr., 484 F. App'x 130, 131 (9th Cir. 2012) ("Low literacy levels, lack of legal knowledge, and need for some assistance . . . are not extraordinary circumstances to warrant equitable tolling."). Because a lack of legal knowledge is a circumstance common to many prisoners, it is neither an "extraordinary circumstance" or an "external force" which would justify equitable tolling.

**2. Limited English Ability**

The mental health records submitted by respondent include petitioner's TABE scores. "The TABE (Tests of Adult Basic Education) scores reflect an inmate's educational achievement level and are expressed in numbers reflecting grade level." Marcelo v. Hartley, No. CV 06-3705 CAS (SS), 2008 WL 4057003, *4 n. 7 (C.D. Cal. Aug. 27, 2008) (citing In re Roderick, 154 Cal. App. 4th 242, 253 n. 5, 257 n. 10 (2007)). The TABE test is an English language test. Petitioner's TABE scores were extremely low. They varied from 0.0 to 3.0. (ECF No. 38 at 50-52, 122, 124, 138.) Primarily, petitioner was rated under 2.0. That score indicates petitioner had English language skills at a second grade level or below.

California regulations require inmates with a TABE score lower than 4.0 to be evaluated for staff assistance or a reasonable accommodation for "effective communication" in prison disciplinary proceedings. 15 Cal. Code Regs. § 3000. However, low literacy levels are not extraordinary circumstances warranting equitable tolling. See Baker, 484 F. App'x at 131; Payne v. Valenzuela, No. CV 15-3243 FMO (AFM), 2015 WL 9914190, at *5 (C.D. Cal. Dec. 4, 2015) (TABE scores ranging from 1.7 to 2.2 do not constitute an extraordinary circumstance for purposes of equitable tolling), rep. and reco. adopted, 2016 WL 304294 (C.D. Cal. Jan. 25, 2016); Green v. Small, No. CV 10-0139 DOC(JC), 2011 WL 91045, at *2 (C.D. Cal. Jan. 2, 2011) (rejecting petitioner's claim of entitlement to equitable tolling based on pro se status, lack of legal knowledge or sophistication, and illiteracy), rep. and reco. adopted, 2011 WL 91045 (C.D. Cal.

Jan. 2, 2011); Stableford v. Martel, No. SA CV 09-1071 JST(RZ), 2010 WL 5392763, at *3 (C.D. Cal. Sept. 14, 2010) (rejecting petitioner's argument that his illiteracy, dyslexia, lack of education, and limited access to "inadequate" prison library were "sufficiently extraordinary to warrant tolling of the limitations period"), rep. and reco. adopted, 2010 WL 5416838 (C.D. Cal. Dec. 20, 2010).

Further, language limitations do not, per se, justify equitable tolling. See Mendoza v. Carey, 449 F.3d 1065, 1069-70 (9th Cir. 2006). Rather, a petitioner must show that the language barriers "actually prevented timely filing." Id. Petitioner argues that it took him "many years and many attempts to locate a person with sufficient legal acumen and bi-lingual skills to enlighten and competently assist petitioner in his quest for [a] remedy." (Resp. to Order to Address Stat. of Lim. (ECF No. 23 at 4).) As stated above, ignorance of the law, or lack of "legal acumen" is not, however, grounds for equitable tolling. Nor is a lack of legal assistance or of adequate legal assistance. See Jensen v. Madden, No. 2:17-cv-1081 GEB AC P, 2017 WL 3069445, at *2 (E.D. Cal. July 19, 2017) (citing Lawrence v. Florida, 549 U.S. 327, 336-37 (2007)). Even though he has relied upon third parties to file for him, petitioner retained the "personal responsibility of complying with the law." Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010). Moreover, petitioner's statement that he spent a long time looking for the right person to help him indicates that petitioner did, in fact, know that he needed to pursue his legal remedies before he finally filed his petition here.

Further, the record shows that petitioner did have the assistance of a translator for his legal needs at various points between 2008 and 2011. Petitioner apparently had the help of a translator in filing a habeas petition in the California Supreme Court in August 2009. (See LD 3.) He also had translation assistance in 2010 when he filed an inmate appeal. (See LD 5.[2]) Petitioner does not allege he was unable to obtain translation help, only that he was unable to obtain someone with legal experience who could provide translation help.

---

[2] To the extent there is any argument that petitioner was unable to find a translator prior to January 2011, it should be noted that he also had translation assistance to file grievances in 2013 and 2014, showing that he could have filed his federal petition prior to October 2015. (LD 6, 7.)

6

Because petitioner's limited English abilities also do not warrant equitable tolling, the court is left to consider petitioner's contention that his mental incompetence should be considered a ground to equitably toll the statute of limitations.

### 3. Mental Incompetence

#### a. Legal Standards

A petitioner's mental impairment may provide a basis for equitable tolling. The Ninth Circuit has articulated a specific, two-part test for an equitable tolling claim based on a petitioner's mental impairment:

> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable to rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Bills v. Clark, 628 F.3d 1092, 1099–1100 (9th Cir. 2010) (citations and footnote omitted; italics in original); see also Orthel v. Yates, 795 F.3d 935, 938 (9th Cir. 2015) ("A petitioner seeking equitable tolling on the grounds of mental incompetence must show extraordinary circumstances, such as an inability to rationally or factually personally understand the need to timely file, or a mental state rendering an inability personally to prepare a habeas petition and effectuate its filing.").

"The relevant question [is,] '[d]id the mental impairment cause an untimely filing?'" Stancle v. Clay, 692 F.3d 948, 959 (9th Cir. 2012) (quoting Bills, 628 F.3d at 1100 n. 3.) Bills provides further guidance for applying its two-part test:

> [T]o evaluate whether a petitioner is entitled to equitable tolling, the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the

> petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

Bills, 628 F.3d at 1100–01. "This reiterates the stringency of the overall equitable tolling test: the mental impairment must be so debilitating that it is the but-for cause of the delay, and even in cases of debilitating impairment the petitioner must still demonstrate diligence." Yeh v. Martel, 751 F.3d 1075, 1078 (9th Cir. 2014) (citing Bills, 628 F.3d at 1100).

Thus, the first hurdle under Bills is determining whether petitioner had a "severe mental impairment" that would entitle him to an evidentiary hearing on the equitable tolling issue. This court should order an evidentiary hearing where the "current record 'does not clearly answer' the question of whether . . . extraordinary circumstances caused the untimely filing." Winston v. Myles, No. 2:12-cv-1844-JAD-CWH, 2014 WL 1236546, at *2 (D. Nev. Mar. 25, 2014) (quoting Porter v. Ollison, 620 F.3d 952, 961-62 (9th Cir. 2010)).

The district court must take care to ensure that the record regarding the petitioner's mental illness is sufficiently developed to rule on the tolling issue. See Chick v. Chavez, 518 F. App'x 567, 568 (9th Cir. 2013) (remanding "for further development of the record as to [petitioner]'s mental competency and, if necessary, an evidentiary hearing" where record revealed no medical evidence from the time period for which the petitioner sought tolling); Bills, 628 F.3d at 1099–1100 (remanding where the petitioner was in the lowest percentile for verbal IQ, verbal comprehension and working memory, and, according to clinical psychologists, was incapable of inferential thinking necessary to complete a federal habeas form). Nevertheless, "[w]here the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence." Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010); see also Orthel, 795 F.3d at 939–40.

////

Courts have held that a district court's review of a petitioner's mental health records for the time period in question is sufficient to make that determination. See Roberts, 627 F.3d at 773 (district court's review of the petitioner's "extensive medical records" was an amply developed record upon which district court could find an evidentiary hearing unnecessary); Orthel, 795 F.3d at 939 (When the district court ordered the petitioner's entire medical record to evaluate his mental health, it "demonstrated sensitivity to its obligation to ensure that the record is amply developed, pursuant to *Roberts*, and to make a determination based on the 'totality of the circumstances,' as required by *Bills*."); Taylor v. Filson, No. 16-15426, 2017 WL 2684132, at *1 (9th Cir. June 21, 2017) (district court's review of the petitioner's medical records sufficient to conclude equitable tolling not warranted based on the petitioner's mental health) (citing Orthel, 795 F.3d at 939, and Bills, 628 F.3d at 1100).

### b. Discussion

This court has reviewed the 165 pages of petitioner's mental health records provided by respondent. (See ECF No. 38.) Below, the court sets out what those records show, with a particular focus on the time period between May 2008 and January 2011, when petitioner should have filed his federal petition.

- In 2007 when petitioner was admitted to the prison system, he was excluded from the Developmental Disability Program ("DDP") after receiving a passing score on a cognitive test. (ECF No. 38 at 12, 154.) After completing a mental health screening, petitioner was cleared to be housed in the general population. (Id. at 12.)

- In April 2009, petitioner referred himself to the mental health department. (Id. at 151.) He told the psychologist that he felt he was in prison for something he did not do, he was sad, and he had difficulty with his short-term memory. According to this record, the psychologist discussed the CCCMS program with petitioner.[3]

- The earliest mental health diagnosis in petitioner's records is five days later, on April 20,

---

[3] Inmates designated to the CCCMS level of care "are those 'whose symptoms are under control or in partial remission'" and can function in the general prison population, administrative segregation, or segregated housing unit. Coleman v. Brown, 28 F. Supp. 3d 1068, 1074 (E.D. Cal. 2014).

9

2009. The psychiatrist who saw petitioner assessed him with post-traumatic stress disorder ("PTSD") and depression. (Id. at 150-51). The PTSD diagnosis remained petitioner's primary diagnosis throughout his records. The depression diagnosis was less frequent, but appears consistently.

- The April 20, 2009 record also shows that petitioner was housed with the designation "CCCMS." (Id. at 150.) He continued to be housed that way through 2010 (id. at 4, 11), 2011 (id. at 74), 2013 (id. at 45, 52), 2014 (id. at 44), and 2015 (id. at 75). It does not appear that petitioner ever was placed in a higher level of care.

- A June 2009 record shows that a staff psychologist's clinical impression was that petitioner had "Depressive Disorder." (Id. at 149.) The notes from this appointment include a statement that "Inmate doesn't realize what is going on." The psychologist indicated that petitioner did not understand what "depressive disorder" is and that he did not "have ability to communicate with people who can help him." However, the psychologist gave petitioner a GAF score of 55.[4]

- In a January 20, 2010 progress note, the clinician diagnosed petitioner with PTSD and depression. (Id. at 146.) The clinician also noted that petitioner was having "flashbacks about crime" and visual hallucinations. Despite those notations, the clinician assigned petitioner a GAF score of 60.

- On January 28, 2010, petitioner had an annual review of his mental health treatment plan. (See id. at 8.) It was noted that petitioner had a diagnosis of PTSD and that he had recently been prescribed medication for depression.

- In April 2010, a clinician diagnosed petitioner with depression and noted no hallucinations. (Id. at 143.) The clinician added a note that petitioner had not had problems with hallucinations since he started medication. The clinician also circled "no"

---

[4] "Global Assessment of Functioning," or "GAF," is a scale that was used by clinicians to assess an individual's overall level of functioning, including the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders with Text Revisions 32 (4th ed. 2004) ("DSM IV–TR"). It is described in more detail in the text below.

10

regarding whether petitioner's thought processes were "goal directed" and whether he had "linear and logical" thinking. However, the clinician gave petitioner a GAF score of 65-75.

- An October 2010 record shows the following diagnoses: PTSD, depression, anxiety, paranoia, and ETOH[5] dependence. (Id. at 5-6.) Those records show a psychologist's finding that petitioner "was not so mentally disordered that he couldn't function within the structure of the EOP[6] program" and he did not require "highly structured psychiatric care." (Id. at 7.) Petitioner had "normal cognition functioning" and the psychologist found "[n]o barriers to effective communication," with a Spanish translator.

- On April 14, 2011, petitioner reported having had auditory and visual hallucinations. (Id. at 19.) It is not clear from the notation whether those hallucinations were one year or one month "ago." However, ten days later, he reported no hallucinations. (Id. at 18.) In an October 2016 notation, the clinician wrote that plaintiff told him he had initiated mental health services in 2014 for visual and auditory hallucinations. (Id. at 36.) In all but a couple of petitioner's records, no hallucinations are noted.

- Also, at a few points in the records, staff reported that petitioner was talking to himself. (See id. at 63, 131-32.) However, a clinician who noted that fact also noted that petitioner was "stable" off of his psychiatric medication in 2013. (Id. at 131-32.)

- A January 8, 2015 "classification committee chrono," reflects that, for the time period between January 11, 2014 through January 10, 2015, petitioner "was reviewed under P.C. 2962 and meets the criteria for referral as a Mentally Disordered Offender." (Comp. (ECF

---

[5] ETOH stands for ethanol and is used to signify alcohol dependence. See http://medical-dictionary.thefreedictionary.com/ethyl+alcohol.

[6] EOP is the abbreviation for Enhanced Outpatient Program, which is a prison mental health care program designation. Cal. Code Regs., tit. 15, § 3040.1(d); Coleman, 28 F. Supp. 3d at 1075. Inmates in the EOP level of care have "acute onset or significant decompensation of a serious mental disorder." Id. CCCMS is the least severe level of care for mentally ill inmates and EOP is the next least severe level. See Steward v. Sherman, No. C 15-667 WHA(PR), 2016 WL 3345308, at *3 (N.D. Cal. June 16, 2016). There is no indication petitioner was ever assigned to an EOP level of care.

| | |
|---|---|
| 1 | No. 1 at 17).) As described by the court previously, this chrono indicates petitioner had |
| 2 | "an illness or disease or condition that substantially impairs the person's thought, |
| 3 | perception of reality, emotional process, or judgment; or which grossly impairs behavior; |
| 4 | or that demonstrates evidence of an acute brain syndrome for which prompt remission, in |
| 5 | the absence of treatment, is unlikely." (See ECF No. 32 at 7.) This document states that |
| 6 | petitioner's custody level should "remain the same" at "Medium A.[7]" |

- At most of his mental health appointments, petitioner was assigned a GAF score. Petitioner's GAF scores ranged from a low of 55 to a high of 70. Most of his scores were in the 58 to 65 range. At no time was petitioner assigned a score lower than 55. (See id. at 148-149 (scores between 55 and 63 in 2009); 13, 139-142 (scores between 60 and 70 in 2010); 21, 71-73 (scores between 65 and 70 in 2011); 57, 64 (scores between 60 and 65 in 2012); 53, 131-132 (scores between 65 and 67 in 2013); 43-44, 116-117 (scores between 58 and 68 in 2015).)

To summarize, with respect to the time period during 2009 through January 2011, the time period during which a federal habeas petition would have been timely filed, petitioner's mental health records show that he was diagnosed with PTSD, depression, anxiety, and alcohol dependence. Also during some of that time, petitioner reported having hallucinations. However, hallucinations reported in January 2010 appear to have been resolved by April 2010. An October 2010 report showed petitioner with normal cognitive functioning. Even if petitioner was experiencing hallucinations in early 2011 and later in 2014, they were not consistent.

Further, petitioner's hallucinations did not prevent clinicians from assigning petitioner a GAF score within a functional range. A GAF of 61–70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school function (e.g, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Am. Psychiatric Ass'n, Diagnostic and Statistical

---

[7] A designation of "Medium A" custody means the inmate shall be housed in "cells or dormitories within the facility security perimeter," the inmate's "assignments and activities shall be within the facility security perimeter," and "[s]upervision shall be frequent and direct." 15 Cal. Code Regs. § 3377.1(a)(4)

12

Manual of Mental Disorders with Text Revisions 32 (4th ed. 2004). A GAF of 51–60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id. A 41– 50 rating indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning. Id. A GAF of 31–40 indicates: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)" Id. A GAF of 21–30 indicates: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." Id.

Petitioner was never assigned a GAF score lower than 55 and they were mostly above 60. While GAF scores are not dispositive, petitioner's consistently moderate GAF scores are not consistent with a finding that he was so impaired by his PTSD and depression that he could not understand the need to seek habeas relief and to take steps to seek such relief.[8] See Lawrence v. Lizzaraga, No. 2:16-cv-0792 GEB AC P, 2017 WL 495774, at *4 (E.D. Cal. Feb. 7, 2017) (GAF score of 68 means petitioner's "mental faculties were within normal limits" and does not support equitable tolling); Davis v. Malfi, No. CV 06-4744-JVS (JEM), 2015 WL 1383776, at *3 (C.D.

---

[8] The court recognizes that the American Psychiatric Association discontinued use of the GAF scale. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) (GAF scale dropped due to its "conceptual lack of clarity" and "questionable psychometrics in routine practice"). However, the Ninth Circuit has continued to look to the GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Garrison v. Colvin, 759 F.3d 995, 1003 n. 4 (9th Cir. 2014) (finding in the context of a social security disability appeal that GAF scores are relevant to the disability assessment); see also Dowdy v. Curry, 617 F. App'x 772 (9th Cir. 2015) (GAF score indicating "only moderate symptoms of impairment" did not support equitable tolling). In addition, as shown by the citations in the text, other district courts in this circuit continue to consider GAF scores when determining whether a petitioner's mental state justifies equitable tolling.

Cal. Mar. 20, 2015) (GAF scores between 60 and 70, with two scores of 53 and 55, among the court's reasons for finding no basis for equitable tolling based on mental incompetence); Sigmon v. Kernan, No. CV 06-5807 AHM (JWJ), 2009 WL 1514700, at *9 (C.D. Cal. May 27, 2009) (GAF scores between 55 and 66 "indicate only mild to moderate impairment" and do not provide a basis for equitable tolling); Lawless v. Evans, 545 F. Supp. 2d 1044, 1049 (C.D. Cal. 2008) (GAF score of 65 does not justify claim for equitable tolling due to mental incompetence)

With respect to plaintiff's classification as a Mentally Disordered Offender, state law uses this categorization in order to require mental health treatment as a condition of parole. See Cal. Penal Code § 2962. One of the factors for identifying an inmate under this section is that the severe mental disorder "was one of the causes of, or was an aggravating factor in, the commission of a crime for which the prisoner was sentenced to prison." Cal. Penal Code § 2962(b). Therefore, the court assumes, the condition existed both prior to, and during, petitioner's incarceration. The statute specifically excludes some disorders such as personality disorders, developmental disabilities, and addiction. Id. § 2962(a)(2). Because this section appears to cover a multitude of diagnoses and ability levels, without more information about why petitioner was found to qualify, the court does not find that this designation overrides the specific observations of clinicians in petitioner's medical records over the years.

Finally, petitioner's treatment at the CCCMS level of care "suggests that petitioner was able to function despite his mental health problems." Washington v. McDonald, No. CV 09-2632-JVS (AJW), 2010 WL 1999469, at *2 (C.D. Cal. Feb. 19, 2010) (citing Coleman, 922 F. Supp. 2d at 903 n. 24), rep. and reco. adopted, 2010 WL 1999465 (C.D. Cal. Feb. 24, 2010). CCCMS is the least restrictive level of mental health care and meant that petitioner was consistently housed in the general population.

This is not a case like that considered by the Ninth Circuit in Forbess v. Franke, 749 F.3d 837 (9th Cir. 2014). In that case, the prisoner had persistent delusions that he was working for the FBI. His delusions were documented by various doctors and they were elaborate. He explained that his delusions caused him to believe he had no need to file a federal habeas petition because his work for the FBI would result in his release. 749 F.3d at 839. Petitioner in the present case

14

had neither consistent delusions nor delusions that appeared to affect his thinking about his legal status.

In cases like the present one, where a petitioner had mental health problems but had cognitive abilities within normal ranges, the Ninth Circuit has held equitable tolling is not warranted. In Roberts v. Marshall, 627 F.3d 768, 770 (9th Cir. 2010), the court declined equitable tolling because the petitioner's mental health records showed that he was medicated for severe psychotic depression disorder, but he had normal mental functions, his appearance, behavior, mood, speech, appetite, sleep and affect were within normal limits, he was not delusional, and had normal insight and judgment. In Orthel v. Yates, 795 F.3d 935, 941 (9th Cir. 2015), the Ninth Circuit affirmed the dismissal of a petition where substantial evidence showed that, despite fluctuations in mental health, the petitioner possessed sufficient competence and capability in the year following the date on which the state court judgment became final as well as sufficient competence during much of the eleven-year span between finality of judgment and filing of his federal petition.

The records provided do not reflect that petitioner has or had a mental impairment so severe that he was unable to rationally or factually understand the need to timely file a petition or that he was rendered unable to file a petition. Rather, the records show that petitioner's functional impairment was moderate, at most, and his cognition has been intact throughout almost all of his incarceration. Further, and importantly, there is no indication in the record that petitioner's mental health previously made it impossible to file a timely petition but had improved in 2015 to the point he could do so. Rather, petitioner's diagnoses appear fairly consistent over the course of his incarceration. Based on the court's review of petitioner's mental health records, and based on this district court's limited resources and time, this court does not find an evidentiary hearing is required to make a determination of petitioner's mental competence. The existing record is sufficient to conclude that petitioner had the mental capacity to understand the need to timely file a petition and to effectuate its filing.

Finally, even if petitioner satisfied the first prong of the Bills test, equitable tolling would not be warranted because petitioner has not shown that he was diligent in pursuing his claims "to

15

the extent that he could understand them, but that [his] mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance." Bills, 628 F.3d at 1100.  Petitioner has not alleged any specific facts showing that he attempted, between 2008 and 2011, to obtain assistance in order to file a timely petition or that his mental impairment prevented him from locating assistance or from understanding any assistance that he had obtained.  Id. at 1100-01; see also Lott v. Mueller, 304 F.3d 918, 923 (9th Cir. 2002) (equitable tolling determinations "turn[] on an examination of detailed facts").  Petitioner's simple statement that it took him a long time to find another inmate with the English/Spanish skills and "legal acumen" to help him is not sufficiently specific to demonstrate diligence.

## CONCLUSION

This court finds petitioner is not entitled to equitable tolling based on his ignorance of the law, limited English language skills, or mental health.  Therefore, the petition is untimely under 28 U.S.C. § 2244(d)(1) and IT IS HEREBY RECOMMENDED that the petition be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the

////

////

////

////

district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: September 11, 2017

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/reyn2182.fr2

17